**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, ex rel.** | ) | |
| **DONTE REDDING,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 01 C 6893** |
| | ) | |
| **BLAIR J. LEIBACH,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Respondent.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Petitioner Donte Redding was convicted on March 11, 1997 of first degree murder and sentenced to 38 years in prison for his role in the murder of nine-year-old Donnetta Poole, an innocent bystander killed by a stray bullet. Petitioner appealed his conviction, arguing that inappropriate statements by the prosecutor, primarily during closing argument, denied Petitioner his right to a fair trial. The Illinois Appellate Court denied his appeal on August 15, 2000, and on June 1, 2001, the Illinois Supreme Court allowed the Petitioner to file a late petition for leave to appeal. In this petition, Redding again argues that inappropriate comments by the prosecution violated his constitutional rights. The Illinois Supreme Court denied the petition for leave to appeal on July 23, 2001.

On October 25, 2001, Petitioner filed this action. His federal habeas petition argues, again, that the prosecutor's comments deprived him of his right to a fair trial, and challenges the sufficiency of the evidence to support his conviction. In an amended petition filed by counsel on May 24, 2002, Petitioner argues, in addition, that his Fifth and Sixth Amendment rights were violated because he was convicted of accountability for murder when the individual who actually fired the shots was found not guilty by reason of self-defense. For the following reasons, the petition for habeas corpus is denied.

<u>**BACKGROUND**</u> [1]

Keith Price, who lived at 6438 Fairfield, was an eyewitness to the events resulting in the death of Donnetta Poole. *People v. Redding*, No. 1-98-0123, at 2 (1st Dist. Aug. 15, 2000) (Ex. A to Respondent's Answer.) On June 21, 1996, the day of the shooting, Price was sitting on his front porch on South Fairfield Avenue with family members, facing north. Between 7:00 and 7:15 p.m. that evening, Price witnessed a van pull up between 6425 and 6427 South Fairfield. Four or five men exited the van and began talking to the Petitioner and to Joseph Taylor, who were standing outside. Soon after, the men began shouting. A fist fight broke out and lasted for five to ten minutes, ending when the men from the van got back in the van and left the scene.

Price did not see any guns during this first altercation. After the van left, Price saw the Petitioner go into his house at 6425 South Fairfield[2] and re-emerge with his hand placed on the side of his hip. *Id.* at 2-3. Taylor and the Petitioner then walked north to the corner of 63rd street and Fairfield. *Id.* at 3.

Minutes later, while Petitioner and Taylor were still at the corner, the van returned and stopped in front of Taylor's house. *Id.* Two men, one of them holding a golf club, exited the van and began knocking on the door of Taylor's house. When the two men did not receive an answer, they started to return to the van. *Id.* As they approached the van, the Petitioner yelled at the two

---

[1]    A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes the state court's factual findings are correct, 28 U.S.C. § 2254(e)(1); factual determinations of a state court are presumed to be correct and hence not "unreasonable," unless a petitioner can show otherwise by clear and convincing evidence. *See Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003); *Miller-El v. Cockrell*, 537 U.S. 322, 339-42 (2003); *see also Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir.1999) (calling this a "rigorous burden of proof"). Redding does not challenge the Illinois Appellate Court's factual findings in his petition. The court, therefore, adopts the facts set forth in the Illinois Appellate Court's Order of August 15, 2000, Ex. A to Respondent's Answer.

[2]    The Illinois Appellate Court opinion does not identify the exact address of Taylor's house, but this court has reviewed the trial record, in which witnesses provided the address. (Trial Transcript, Vol. I, at 133.)

men from the corner of 63rd and Fairfield. *Id.* at 3. At this point, two or three more men exited the van, which was still standing in front of Taylor's house. *Id.*

Price testified that when these men emerged, the Petitioner raised his hand and began to shoot south in the direction of the men and the van. *Id.* The other men shot back at the Petitioner, but he continued to walk south toward them, and continued to fire his weapon. *Id.* At some point after the Petitioner approached the van, firing, the other men stopped shooting, returned to the van, and fled the scene. During this volley of bullets, the victim, an unarmed bystander, was shot and killed. *Id.*

On cross examination, defense counsel confronted Price with prior inconsistent statements he made to police on the day of the incident. Price denied ever having told a police officer that he witnessed a man dressed in black holding a gun near the van when the shooting commenced.[3] *Id.* at 3-4. He did admit, however, that on the night of the incident, he did not tell police that he saw the Petitioner fire a gun. *Id.* at 4. On re-direct, Price testified that all the men involved in the shooting belonged to the Gangster Disciples street gang and that on the night of the shooting, he had spoken to police but told them that he did not want to be a witness in the case. *Id.* The prosecutor also asked Price whether he was concerned about his own safety, and Price answered "yes," but the court sustained the defense objection to this question and answer. *Id.*

The prosecution's next witness, Richard Baines, admitted to being a member of the Gangster Disciples affiliated with a block on South Talman Avenue, two blocks east of Fairfield. *Id.* Baines had a previous conviction for possession of a controlled substance and a pending home invasion charge, but he denied receiving any consideration for his testimony. *Id.* Baines testified that at approximately 7:00 p.m. on June 21, 1996, he was at the corner of 63rd Street and Rockwell

---

[3] A Chicago police officer, Laurel Bresnahan, testified for the defense that on the night of the shooting, Price told her that he saw a man dressed in black, holding a gun out of the van when the shooting started. *Id.* at 7-8.

Street (a block east of Talman) getting his hair styled when his friends pulled up in a van. *Id.* The driver, Eric Lash, and the three passengers, Derrick Lash, Carlos Bellamy, and Pareece Talbert[4], all were members of the Talman faction of the Gangster Disciples. *Id.* Baines observed that Carlos was holding a golf club. *Id.* Baines got into the van and learned that his friends had been involved in a fist fight with certain Gangster Disciples from Fairfield and now planned to return and fight again. *Id.* at 4-5. Baines testified that he decided to go with them, hoping to prevent the fight because "we was all friends over there." *Id.* at 5.

When the van pulled up in front of Taylor's house, Carlos jumped out to knock on the door, while the other men waited beside the van. *Id.* Baines testified that Eric saw Taylor at the corner of Fairfield and 64th Street and that he, Baines, saw Taylor holding a gun, but did not see anything in the Petitioner's hand. *Id.* Baines recalled that Taylor and Eric Lash began arguing and both Taylor and the Petitioner began walking towards the van, shooting at the men near the van as they approached. *Id.* Derrick Lash and Pareece Talbert shot back at the Petitioner and Taylor. *Id.* During the trial, Baines identified both the Petitioner and Taylor and testified that both men were Gangster Disciples from the Fairfield block. *Id.* Baines also testified that approximately two weeks prior to the shooting, he had a conversation with Petitioner, Derrick, Eric, and Pareece, in which Petitioner had unsuccessfully attempted to sell the other men a .45 caliber pistol. *Id.* at 5-6.

On cross-examination, Baines admitted that he made no effort to stop the fight other than suggesting the men talk it out and that he did not contact the police after the incident. *Id.* at 6. Baines admitted, further, that he was the only person involved in the incident who was not charged with murder. *Id.*

Thomas Lamb, an officer with the Chicago Police Department, testified that he interviewed the Petitioner on the night of the shooting in the presence of the Petitioner's mother, grandmother

---

[4]     Not all of the last names appear in the appellate court's opinion; this court located them in the trial record.

and a third woman, unidentified in the court's opinion. *Id.* Lamb recalled that Petitioner gave conflicting information about the shooting. Initially, Petitioner told Officer Lamb that he was out riding his bicycle on Washtenaw when he heard the shots. *Id.* Later in the interview, Petitioner told Officer Lamb that he was at the corner of 64th and Fairfield when he thought he saw someone shooting from a van as it passed him. *Id.* Lamb took no notes of this interview. *Id.* Lamb subsequently learned that the Petitioner was a named offender in the shooting and returned to the Petitioner's house and arrested him. *Id.*

Ursula Walowski, an Assistant State's Attorney, also interviewed the Petitioner on the night of the shooting, and testified that he offered several versions of the events to her, as well. *Id.* at 6-7. Initially, Petitioner told Walowski that at the time of the shooting he was a block or two away on his bike. *Id.* at 7. Petitioner then changed his story and stated that he was not involved in the shooting but was involved in an earlier fight with Eric, Derrick, Carlos, and Pareece. *Id.* Petitioner added that the people in the fight left in a van but returned later, got out of the van, and began shooting at Petitioner and his friends, "Scooby" and Taylor. *Id.* Petitioner initially claimed that as soon as the shooting started, he and his friends ran away. *Id.* Later, Petitioner told ASA Walowski that Taylor was involved in the shooting; at no time did he admit to any personal involvement. *Id.*

Laurel Bresnahan, a Chicago police officer, testified for the defense that on the night of the shooting Keith Price told her that he saw a man in black holding a pistol from the van when the shooting started. *Id.* at 7-8. She further testified that Price provided no details regarding the shooting and never stated that the Petitioner fired a gun or that anyone was walking south on Fairfield while firing a gun. *Id.* at 8.

A number of alibi witnesses testified on behalf of the Petitioner, as well. Tasha Edwards testified that at the time of the shooting she was in front of her house, at 6345 Fairfield, with her son and the Petitioner. *Id.* When she heard shots, Ms. Edwards recalled, all three ran into the house for protection. *Id.* It was not until the shooting stopped that the Petitioner went back outside, and

she did not see him with a gun.  *Id.*  Ms. Edwards admitted on cross examination that after learning that the Petitioner was arrested for murder, she never called the police to tell her story.  *Id.*  She also admitted that she knows the Petitioner through her brother, Diwon Edwards.  *Id.*

Diwon Edwards, who lives with his sister Tasha, also testified that on June 21, 1996, he was across the street from his house when he heard the shots and that he saw the Petitioner across the street with his sister and her son at the time the shots were fired.  *Id.* at 8-9.  Diwon ran for safety, but at some point looked across the street and observed the Petitioner helping his sister and her son get inside her house.  *Id.* at 9.  After the shots stopped, Edwards saw the Petitioner run down the street in the direction of the shooting.  *Id.*  Marvin Barry provided a similar story; he testified that he was across the street from Diwon's house with Diwon when he heard the shots, and that before the shots were fired, he saw the Petitioner across the street with Tasha and her son.  *Id.*

John Griffin, an officer with the Chicago Police Department, was another defense witness. Griffin testified that he was present for the interview conducted by Assistant State's Attorney Walowski and took notes during that interview.  *Id.* at 9-10.  According to Griffin's notes, (which Petitioner himself did not review), Petitioner identified Tasha Edwards as a witness to the shooting; Griffin never interviewed Ms. Edwards herself.  *Id.* at 10.

Joanne Biddings, Petitioner's grandmother, testified that Petitioner was home with her and other family members at the time of the shooting.  (Trial Transcript, Vol. III, at 665.)  She testified, further, that she was present during Officer Lamb's interview with the Petitioner, and that Petitioner did not tell Officer Lamb he was riding his bike at the time of the shooting.  *People v. Redding*, No. 1-98-0123, at 10.

Finally, David Jackson, a private investigator, testified based on his observations of Price's home at 6438 Fairfield, made the day prior to the trial.  *Id.*  As of that date, according to Jackson, Price's porch was enclosed and facing east.  *Id.*  Thus, Jackson testified, a person would be unable to look north on Fairfield from Price's porch.  *Id.*

6

Redding and his co-defendant Taylor were tried in a simultaneous trial with separate juries. *Id.* On March 11, 1997, the Petitioner was found guilty of first degree murder. *Id.* Taylor, who asserted the affirmative defense of self defense, was acquitted. (Brief and Argument of Petitioner in the Illinois Appellate Court, No. 1-98-0123, Ex. B to Respondent's Answer, at 1.)

**Direct Appeal**

The Petitioner appealed his conviction for murder to the Illinois Appellate Court, arguing that he was denied his right to a fair and impartial trial because of a number of improper comments by the prosecution. In all, the Petitioner identified more than twenty statements that he believes deprived him of a fair trial. (Brief and Argument of Petitioner in the Illinois Appellate Court, No. 1-98-0123, Ex. B to Respondent's Answer, at 14-29.) In reviewing the matter, the Appellate Court grouped the allegedly objectionable comments as follows: Petitioner claimed the prosecutor (1) made arguments not based on the evidence, (2) misstated the law of accountability, (3) improperly injected his opinions into the closing argument, (4) improperly referred to witnesses' fear of testifying, (5) made non-relevant comments that prejudiced the jury, (6) commented on the Petitioner's failure to testify, and (7) improperly attempted to shift the burden of proof. (*Id.*) The Appellate Court also addressed Petitioner's argument that the cumulative effect of the improper statements denied him a fair trial. (*Id.*) On August 15, 2000, the Illinois Appellate Court denied all of Petitioner's claims on various grounds and affirmed his conviction. *Redding*, No. 1-98-0123, at 37.

**Petition for Leave to Appeal**

On June 1, 2001, the Petitioner filed a petition for leave to appeal to the Illinois Supreme Court. (Petition for Leave to Appeal, *People v. Redding*, No. 91623, Ex. D to Respondent's Answer.) In this petition, submitted *pro se*, the Petitioner again focused on the prosecutor's comments at trial; he presented the claim as an ineffective assistance of counsel argument, but the substantive argument was the same one he had presented before the Appellate Court. (*Id.* at 7-8.)

The Illinois Supreme Court, on July 23, 2001, denied the Petitioner's petition for leave to appeal. (Order of the Supreme Court of Illinois Denying Leave to Appeal in *People v. Redding*, 195 Ill.2d 592, 755 N.E.2d 481 (2001), Ex. E to Respondent's Answer.) This habeas petition followed.

## DISCUSSION

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act entitles a prisoner to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254. For claims that were adjudicated on the merits by a state court, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in that state court proceedings. 28 U.S.C. § 2254(d)(1) & (2). As explained in numerous cases,

> a state court decision is "contrary to" federal law if the state court either incorrectly laid out governing Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case. Next, a state court's application of a correct statement of federal law is "unreasonable" if it is objectively so, and not merely erroneous or incorrect. Specifically, a state court's decision minimally consistent with the facts and circumstances of the case is not unreasonable, while a determination lying well outside the boundaries of permissible differences of opinion is.

*Conner v. McBride*, 375 F. 3d 643, 649 (7th Cir. 2004) (citations and internal quotations omitted).

Before an individual  may seek habeas relief in the federal courts, he must "(1) exhaust all remedies available in state courts . . . and (2) fairly present any federal claims in state court first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468  (7th Cir. 1996) (citations omitted). A petitioner for habeas relief must submit "both the operative facts and the controlling legal principles of a constitutional claim" before properly seeking habeas review in the federal courts. *Id.* at 469.

In addition, a petitioner's failure to make use of existing state procedures may serve as a

bar to habeas relief if the petitioner forfeited the claim by violating a state procedural rule. *Boerckel v. O'Sullivan*, 135 F.3d 1194, 1197 (7th Cir. 1998), *rev'd on other grounds*, 526 U.S. 838 (1999). Failure to adhere to state procedure results in procedural default. In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court stated that it would not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729. The rule set out by the Court in *Coleman* is applicable to both substantive and procedural state law grounds. *Id.* In the event that a state court "declines to review a petitioner's claim because the petitioner has failed to satisfy a state procedural rule, that claim is procedurally defaulted and barred from federal habeas review." *Pisciotti v. Washington*, 143 F.3d 296, 300 (7th Cir. 1998). The procedural bar is enforced even where the state court has made additional alternative rulings. As the Court explained in *Harris v. Reed,* 489 U.S. 255 (1989):

> [A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

*Id.* at 265 n.10 (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935)) (emphasis in original).

A federal court may review a defaulted claim only "if the petition shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure." *Rodriquez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). Absent such a showing, "a defaulted claim is reviewable only if refusal to consider it would result in a 'fundamental miscarriage of justice,' that is, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citations omitted). In order for a court to find a "fundamental miscarriage of justice" the petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

As previously mentioned, the Petitioner has raised two primary arguments in his habeas

petition. First, he challenges the prosecutor's statements as improper and prejudicial. Second, Petitioner argues here that his Fifth and Sixth Amendment rights were violated because he was convicted on a theory of accountability under state law where the primary shooter was acquitted by reason of self defense. Petitioner also makes a vague reference to claims related to the prosecution's use of false evidence and insufficiency of the evidence. The court will address these arguments in turn.

## I.    Due Process Claims

Petitioner's first claim identifies more than twenty statements made by the prosecutor during his criminal trial which he claims denied him the right to a fair trial. The State argues, in response, that these claims fail either because they are procedurally defaulted or on their merits. Following the Appellate Court's lead, the court addresses the prosecutor's comments in groups.

### A.    Prosecution made arguments not based on the evidence

First, Petitioner objects to three statements made during the prosecution's closing argument, which Petitioner believes were not based on evidence admitted at trial. Each of the challenged statements relates to the prosecution's contention that, after the initial fight, Petitioner and Taylor went into the house to grab two guns:

     (1)    "[A]t that point in time, this defendant['s]. . .co-defendant Taylor, went in his house and retrieved two handguns."

     (2)    "They went into this defendant's house and retrieved two handguns. One being a .45 caliber semi-automatic weapon."

     (3)    "They went inside of his house; got the weapons together; came out of the house together; went to the corner together; ran down the street together; and fired the shots together."

*Redding*, No. 1-98-0123, at 12.

Defense counsel did object to each of these statements at trial; on appeal, however, the Illinois Appellate Court determined that the Petitioner waived this argument under state procedural rules by failing to raise them in a post-trial motion. The court cited *People v. Enoch*, 122 Ill.2d 176,

186, 522 N.E.2d 1124, 1130 (1988), for the proposition that if a defendant has the opportunity to raise a claim during trial, then that defendant must both object at trial and raise the claim in a post-trial motion, in order to preserve the issue for appeal. A reviewing court will make an exception to this rule in the case of plain error, *see People v. Turner*, 128 Ill.2d 540, 555, 539 N.E.2d 1196, 1202 (1989), but only if the evidence is closely balanced or the defendant was denied a fair trial, circumstances that, in the Appellate Court's view, were not present in this case. *Redding*, No. 1-98-0123, at 15.

Because the Illinois Appellate Court concluded that the Petitioner waived this argument on state procedural grounds, his claim before this court is barred by procedural default. There appears to be no basis for an exception to the procedural default rule. Petitioner has not identified any "cause" for his failure to raise this on direct appeal, nor has he established prejudice from the prosecutor's statements. The jury heard Keith Price testify that after the initial altercation, he saw Petitioner enter his house and return with his hand on his hip. Price and Richard Baines both testified that they observed Petitioner and Taylor shooing at members of a rival gang faction. Baines testified that just two weeks before the incident, Petitioner attempted to sell a .45 caliber weapon, the type of weapon used in the murder. The prosecutor arguably embellished this testimony when he suggested that Petitioner and Taylor entered the house together (a suggestion arguably unfair to Taylor), but Petitioner has not shown that he suffered actual prejudice as a result of the misstatements.

Although procedural default disposes of these claims, the court pauses to note that the authorities cited by Petitioner on the merits of this argument are distinguishable. In *Darden v. Wainwright*, 477 U.S. 168 (1986), the prosecutor referred in his closing to the defendant's previous prison sentence, characterized defendant as an "animal," and suggested that the death penalty was the only means to deter further wrongdoing. The Court concluded that these comments did not deny defendant a fair trial because they were responsive, in part, to defense counsel's closing and

did not misstate or manipulate evidence. *Id.* at 181-82. Similarly, in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), the prosecutor stated his personal opinion regarding the petitioner's guilt and speculated about the petitioner's motive for exercising his right to a trial. The trial court instructed the jury to disregard that latter statement, and the Supreme Court concluded these circumstances were insufficient to support habeas relief, as the challenged statements did not implicate any constitutional rights. *Id.* at 645. *United States v. Stillwell*, 900 F.2d 1104, 1113-14 (7th Cir. 1989), *abrogated on other grounds by Jones v. U.S.,* 529 U.S. 848 (2000), involved a prosecutor's reference to evidence that was not admitted at trial and to two witnesses who had not testified at trial. *Id.* at 1112. The Seventh Circuit found both comments appropriate in the context of the trial and in response to the defense attorney's closing. *Id.* at 1113-14. Finally, Petitioner cites *Williams v. Calderon*, 52 F.3d 1465, 1474-75 (9th Cir. 1995), a habeas petition based on a claim that the prosecution's star witness perjured himself when he testified that the prosecutor had made no promises with regard to charges against him. The trial court concluded, from conflicting testimony, that there was no deal between the prosecutor and the witness and the Ninth Circuit affirmed the denial of habeas relief.

Prosecutorial misconduct resulted in overturning a conviction in only two of the cases cited by Petitioner. First, in *People v. Ray*, 126 Ill. App. 3d 656, 467 N.E.2d 1078 (1st Dist. 1984), the court reversed a defendant's conviction because during closing argument the prosecution made a number of improper comments, including: stating 16 times that the defense attorney was lying, misstating the applicable law, referring to evidence held inadmissible at trial, impermissibly referring to witnesses' fear of defendant, improperly discussing the defendant's criminal history, and suggesting that the defendant was hiding behind his constitutional rights. *Id.* at 660-62, 467 N.E.2d at 1081-83. The misconduct described in the *Ray* opinion is on its face far more egregious than the three statements Plaintiff complains of here.

Finally, in *Berger v. United States*, 295 U.S. 78 (1935), the prosecutor's closing was, in the

12

Supreme Court's view, undignified and intemperate; in addition, the prosecutor conducted himself in a highly inappropriate manner on cross examination, misstating facts, creating false statements and presenting them as the prior statements of the witness, suggesting that certain statements were made to him outside of court, and assuming prejudicial facts not in evidence. The Supreme Court reversed Berger's conviction, but noted that had the evidence against him been stronger, it might have reached a different conclusion. *Id.* at 84.

The court concludes that Petitioner's claim concerning the prosecutor's references to retrieval of the weapon are procedurally defaulted, and that Petitioner has not established cause or prejudice for this court to consider that claim.

### B.      Prosecution misstated the law of accountability

Petitioner next claims that the prosecutor's comments misstating the law of accountability during closing argument denied him a fair trial. Specifically, during his closing the prosecutor stated:

(1)     "And that is the law of Criminal Responsibility. Because the law recognizes that when two or more people get together, the danger goes up, the chances of someone getting hurt are much greater. And that's why you have the law of Criminal Responsibility."

(2)     "As my partner explained, it doesn't matter whether he intended to kill Donnetta or not, he was intending to kill the guys in the rival gang. And isn't it foreseeable that there's kids out there; that a child would die as a result of this nonsense?"

*Redding*, No. 1-98-0123, at 16. Petitioner objects to these comments. He argues that there is no "law of criminal responsibility" as referred to by the prosecution and that the law of accountability does not include a foreseeability test.

The Illinois Appellate Court determined that Petitioner waived these arguments on appeal because he failed to object to them at trial. *Id.* As noted earlier, in order to preserve an issue for appeal under Illinois's procedural rules, a defendant must both object at trial and include the claim in a post trial motion. This claim is procedurally defaulted, and Petitioner has not suggested that

cause and prejudice exists.[5]

### C. Prosecution improperly injected his opinions into closing argument

The Petitioner alleges that the prosecution made improper statements regarding his personal opinions during closing arguments which denied him a fair trial. Each of the statements was, in the Appellate Court's view, a response to a comment made by defense counsel in his own closing. First, in response to defense counsel's discussion of the medical examiner's testimony, the prosecutor stated:

(1)  "I swear to God, I don't know how to respond, because I don't know what he [defense counsel] is talking about. I have no idea what he is talking about . . . I don't know what he is talking about."[6]

---

[5]  Again, the authorities cited by Petitioner are inapposite. In *Napue v. Illinois*, 360 U.S. 264 (1959), the Court concluded that post-conviction relief was appropriate where the prosecution failed to correct the false testimony of a key prosecution witness that he had been given no consideration for his testimony. In *Mooney v. Holohan*, 294 U.S. 103 (1935), the petitioner alleged that he was denied due process because the prosecution used perjured testimony and suppressed evidence that would have established his innocence. The Court recognized that petitioner had alleged a due process violation, but failed to reach his claims because he had not yet presented them to the state court in California, where he was convicted. *Id.* at 110, 115.

[6]  In its review of this statement, the Appellate Court provided a more complete context. Defense counsel stated in closing:

Now, the . . . technician testified that the bullet that was recovered in this case was a .45. . . . . Dr. Lifschultz testified and the forensic gun expert testified, also, that this bullet had to hit a wall, something hard, object, would leave trace evidence on it. And the officer testified that he saw no trace evidence on the bullet. Doctor Lifschultz also testified there was no trace evidence in the wound that he [sic] perform [sic] the autopsy. . . . You must also remember that during the autopsy, Dr. Lifschultz did not testify, did not testify there was any broken bones in the child. This poor baby had no bones broken. Now, the question is what bullet and who fired the bullet that killed this child?

*Id.* at 20. The prosecution responded in closing argument by stating:

Again, and you heard testimony regarding the autopsy talking about trace evidence and I swear to God, I don't know how to respond, because I don't know what he [defense counsel] is talking about. I have no idea what he is talking about. But she is struck [sic] it's the position of [the] body. [sic] Obviously she is facing the guys that were shooting at her. You will get a chance to see this diagram, folks. They are shooting from 6405, shooting down at the guys at 6425. The victim is over here. I mean, where else did this bullet come

(continued...)

14

Second, defense counsel attempted to cast doubt on Baines' credibility, pointing out that Baines was the only participant in the events who was not charged. The prosecutor responded by saying:

>   (2)     "I mean, I guess if - I have never heard this from a defense attorney, telling us that we should charge people just because he [sic] was there."
>
>   (3)     "He [Baines] is telling you the truth."

*Id.* at 18.

Petitioner argues that each of these statements denied him a fair trial. The Illinois Appellate Court considered this argument and rejected it. Although this claim is therefore not barred by procedural default, it will support relief under § 2254 only if it "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In this court's view, neither of these tests is met here. With respect to the prosecutor's statement, "I don't know what [defense counsel] is talking about," the Appellate Court noted that the comment was no more than a response to defense counsel's own arguably confusing reference to the "trace evidence." *Redding*, No. 1-98-0123, at 20 (citing *People v. Wilburn*, 263 Ill. App. 3d 170, 182, 635 N.E.2d 877, 887 (1st 1994)). In fact, no witness testified that any "trace evidence" was found on the bullet.[7] In any event, Petitioner has not explained how he was prejudiced by the

---

[6](...continued)
from? Obviously, she is facing here. And it's at a slight angle because she is at a slight angle, her body. I don't know what he is talking about.

*Id.* at 19.

[7]     As noted, this court has reviewed the trial testimony. Richard Chenow, a police crime lab technician, testified that the bullet retrieved by the Medical Examiner from the victim's body "sustained quite a bit of damage" that could possibly have been caused by striking the victim's
(continued...)

prosecutor's expression of confusion.

Defense counsel did object to the second challenged statement, in which the prosecutor stated he "had never heard" the defendant's implicit suggestion that Baines should also have been charged. The court sustained the objection, and the Illinois Appellate Court determined that the trial court's ruling striking this statement from the record cured any prejudice. *Redding*, No. 1-98-0123, at 20-21 (citing *People v. Franklin*, 135 Ill. 2d 78, 100, 552 N.E.2d 743, 753 (1990)).

The third statement, that Baines was telling the truth, is facially troublesome; but the Illinois Appellate Court reasoned that it was not improper, as the prosecutor did not attempt to move the jury to rely on that opinion because of his expertise or his office. *Redding*, No. 1-98-0123, at 21. The court observed that "'[a] prosecutor may comment on a witness' credibility . . . when such remarks are based on facts in evidence or reasonable inferences drawn therefrom.'" *Redding*, No. 1-98-0123, at 21-22 (quoting *People v. Pope*, 284 Ill. App. 3d 695, 706, 672 N.E.2d 1321, 1328 (4th Dist. 1996)). The court further observed that " 'for a prosecutor's closing argument to be improper, he must explicitly state that he is asserting his personal views, stating for example, 'this is my personal view'." *Redding*, No. 1-98-0123, at 22 (quoting *Pope*, 284 Ill. App. 3d at 706, 672 N.E.2d at 1328). Here, the court concluded that the challenged statement was an appropriate comment on the evidence and permissible, in light of defendant's own closing argument, in which he questioned Baines' credibility; in any event, the court concluded that if the statement was improper, it was harmless in light of the evidence of defendant's guilt. *Redding*, No. 1-98-0123, at 22-23.

In an apparent attempt to demonstrate that the Illinois Appellate Court's decision on these three statements is contrary to federal law, the Petitioner cites *Berger*, 295 U.S. 78. For the reasons noted earlier, this court finds *Berger* distinguishable from this case. In fact, federal law is

---

[7](...continued)
bone. (Trial Transcript, Vol. II, at 429, 432.) He testified that he saw no trace materials on the bullet. (*Id.* at 433.) Dr. Lifschultz, the Medical Examiner, testified that he found no trace material on the bullet he removed from the victim's body. (*Id.* at 449.)

consistent with Illinois law on this issue.   As the Seventh Circuit has explained, a prosecutor improperly "vouches" when she "expresses her personal opinion about the truthfulness of a witness or when she implies that facts not before the jury lend a witness credibility."   *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000).   In this court's view, the Appellate Court's resolution of this issue may not be characterized as an unreasonable application of federal law.

### D.      Prosecution improperly referred to witnesses' fear of testifying

Next, the Petitioner argues that the prosecution's remarks during opening and closing denied him a fair trial by referring to witnesses' fear of testifying.   Specifically, during his opening, the prosecution stated:

> And you'll get an opportunity to hear from people in that community, people that work for a living that have nothing to do with gangs or anything that are just plain scared and reluctant to come forward.   They're scared.   They don't want to come forward.

*Redding*, No. 1-98-0123, at 24.   Next, during closing arguments the prosecution stated:

> You think it's - let me ask you this, folks, do you think people are just lining up outside in the corridor, can't wait to testify against a gang member and murder? [sic] Do you think people line up to be an eyewitness in a case like this?   Absolutely not. Do you know how hard it is for someone in that community to get up here - you know, you're standing up here; you swear to tell the truth, nothing but the truth and the whole truth; you have got to stare down not only the guy you saw shooting out there, but your neighbor, he lives across the street at 6415; not only him, but Joseph Taylor who live [sic] at 6425; then you have got to stare out into the gallery, God knows who is out there, and then tell 14 strangers about what you saw that night about how a 9 years old died.   You think it's real easy?   You think it's a pleasure getting up on the witness stand and getting crossed by two Defense [sic] attorneys? People line up for that?

*Id.*   Still later on in his argument, the prosecutor observed, "I am sure there were many more witnesses to this vicious murder out there.   But these are the witnesses brave enough to come forward."   *Id.*

Petitioner made no mention of the comment during the prosecutor's opening in his motion for a new trial, and he failed to object at trial to the comments in closing concerning the reluctance of witnesses.   The Illinois Appellate Court determined, therefore, that Petitioner's arguments

17

concerning these two matters were waived. *Redding*, No. 1-98-0123, at 25. This court concludes that these two arguments are barred by procedural default, and that Petitioner has made no showing of cause and prejudice sufficient to overcome the bar.

As to the third statement, that "there were many more witnesses," the Illinois Appellate Court noted that a prosecutor is entitled to comment on a witness' fear of testifying in the event that there is some evidence of that fear in the record. *Redding*, No. 1-98-0123, at 24 (citing *People v. Thompkins*, 121 Ill.2d 401, 445, 521 N.E.2d 38, 57 (1988)). At trial, according to the Illinois Appellate Court, evidence was put forth that a number of witnesses were reluctant to testify or talk with police.[8] *Id.* Although reluctance to testify is not tantamount to fear, the Appellate Court observed that the evidence of reluctance defeated any showing of prejudice as a result of the prosecutor's statement; indeed, the jury would likely have drawn an inference of fear once they heard such evidence, whether or not such an inference was justified. *Id.* at 25. The court concluded that the jury would have drawn the inference of fear from reluctance, whether or not such an inference was justified. *Id.* Furthermore, the court held that even if the statement by the prosecution was in fact error, it was harmless in light of the substantial evidence of Petitioner's guilt. *Id.*

Although this court may have addressed the matter differently, the Appellate Court recognized the relevant legal issue and resolved it in a reasonable way. As the Seventh Circuit has repeatedly explained, under 28 U.S.C. § 2254(d)(1), if the state court asked the legally correct question, then its "fact-specific answer cannot be called 'unreasonable' even if it is wrong." *Lindh v. Murphy,* 96 F.3d 856, 867-68 (7th Cir.1996), *rev'd on other grounds*, 512 U.S. 320 (1997). Indeed,

---

[8] In support of this statement, the Illinois Appellate Court observed that on the night of the shooting, Price was reluctant to speak with police officers and later informed police officers that he did not want to get involved. *Id.* at 25. The court also referenced a portion of Officer Richard McFarlane's testimony; McFarlane, who responded to an emergency call about the shooting, testified that a "lot of people didn't want to talk to the police." (Trial Transcript, Vol. II, at 333.)

to make a finding of unreasonableness, this court would have to conclude that the Appellate Court's determinations were "outside the boundaries of permissible differences of opinion," *see Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002), and/or defy characterization as merely "minimally consistent with the facts and circumstances of the case," *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). Petitioner has not established that the Illinois Appellate Court's decision was either contrary to or involved an unreasonable application of clearly established federal law.

**E.  Prosecutor's irrelevant statements at closing inflamed and prejudiced the jury**

The Petitioner next objects to nine comments made by the prosecution at trial which the Petitioner believes were irrelevant and prejudicial. The statements made by the prosecution are:

(1)  "It [Petitioner's case] was laughable";

(2)  "Don't even buy that argument for a second";

(3)  "He's just a liar" "Don't let them snow you on that one";

(4)  "And the only reliable evidence that you have in this case - and I will get to the defense witnesses later, since it was joke - but the only reliable evidence that you have in this case is from Richard Baines and from Keith Price."

(5)  "Just look at some of these things. It's ridiculous. Look at how blurry all of these photos are. You can't see anything. And you have got to wonder why they were taken just with a Polaroid yesterday. That's something for you to consider also, folks."

(6)  "You never hear him talk about his defense witness, did you? During all of his arguments, how long did he talk about the defense witnesses? And you hear them testify. It was ludicrous that you even had to hear from them."

(7)  "You know he's trying to tell you, 'Well, he's fifteen years old. Youngsters always lie.' Well, that's a joke."

(8)  "And he came to court, - and he told you what happened, only to get vilified by a defense attorney."

(9)  "You know what it is? The defense is desperate in this case. They are just desperate. And as a famous professor once said, if you don't have the law on your side, you don't have the facts on your side, dirty up the witnesses."

*Redding*, No. 1-98-0123, at 27-33.

The Illinois Appellate Court determined that the Petitioner's claims as to the first six of these statements were waived because these statements were either not objected to at trial or were not addressed in his post-trial motion. *Id.* at 33. Thus, the court finds these claims procedurally defaulted, and sees no basis for a finding of cause and prejudice.

With respect to the seventh comment (calling defense counsel's reference to the age of a witness a 'joke'), the Appellate Court deemed it an appropriate response by the prosecution to defense counsel's attempt, in closing argument, to explain the contradictory statements Petitioner made to police. *Id.* at 31 (citing *Wilburn*, 263 Ill. App. 3d at 182, 635 N.E.2d at 887). The Illinois Appellate Court did not condone the use of the word "joke" in the prosecution's comment but concluded that any error did not prejudice Petitioner.

Nor was the Appellate Court troubled by the eighth comment, a reference to a witness's being "vilified" by defense counsel. The Appellate Court noted that defense counsel had in fact accused the witness of lying. *Redding*, No. 1-98-0123, at 32. In any event, there was no prejudice to Petitioner, as the trial judge sustained the objection and ordered it stricken.

The Appellate Court referred to the ninth comment, in which the prosecution referred to the defense as "desperate," as excessive, but not so egregious as to deny due process. *Id.* Finally, the Appellate Court observed that even if all nine statements quoted were improper, the error in allowing them was harmless, in light of the substantial evidence of Petitioner's guilt. *Id.*

This court might well have resolved these matters differently; again, however, the court is unable to characterize the Appellate Court's decision as an unreasonable application of federal law or as unreasonable in light of the evidence.

**F.    Prosecution improperly argued the Petitioner's failure to testify**

Petitioner objects to two statements made by the prosecution during closing arguments which, he contends, improperly referred to his decision not to testify in his own defense. First, describing the police officer's initial interview, the prosecutor observed:

> At the time, the officer had not [sic] idea that Donte was a named offender in this case. He just thought he was a possible witness because he lived out there. And he talks to them and he asks him if he knows anything about the shooting that happened that day. And this is where, folks, I would suggest to you that the best evidence comes in. From the best witness.

*Redding*, No. 1-98-0123, at 33. Defense counsel objected to the use of the term "best evidence" and the court sustained the objection. *Id.* The prosecutor nevertheless went on to observe that this evidence "comes from his own lips." *Id.* Later, the prosecutor made more explicit reference to Petitioner's defense posture:

> And now he sits in that chair today and says, I had nothing to do with it. I was out there. So all the time he is still trying to deny responsibility. Now he is trying to separate himself from Joe Taylor. And you saw that through the impeachment of Diwon. And not once, folks, did he ever tell you, or did he ever tell the detectives, or any other police officer, that he was with Tasha in front of Tasha's house. He said, yeah, Tasha saw the incident. He never said he, himself, was in front of Tasha's house, not once. And you can also consider that and use your common sense.

*Id.*

The Illinois Appellate Court reviewed this claim and rejected it on the merits. The Court began its analysis by observing that "[i]n determining whether the prosecutor has improperly commented on defendant's failure to testify, the court must consider whether the comment was intended or calculated to direct the attention of the jury to defendant's failure to avail himself of his legal right to testify." *Id.* at 34 (quoting *People v. Tipton*, 222 Ill. App. 3d 657, 584 N.E.2d 310 (1st Dist.1991)). The federal standard is nearly identical:

> The law is most clear that any indirect commentary on the defendant's failure to testify, including references to 'uncontradicted' or 'uncontested' testimony, in order to be improper, must (1) consist of language and words that are 'manifestly intended' to be a comment on the defendant's decision not to take the stand, when analyzed in the context in which they are used, or (2) be of such a character that the jury would 'naturally and necessarily take it to be a comment on the defendant's silence.'

*United States v. Harris*, 271 F.3d 690, 700 (7th Cir. 2001).

In the Petitioner's case, the Illinois Appellate Court determined that in context the

prosecutor's comments were references to inconsistencies in Petitioner's statements to police and the accounts of his alibi witnesses, not an effort to draw attention to the fact that the defendant opted not to testify. *People v. Redding*, No. 1-98-0123, at 34.

The court was concerned that in pointing out that "not once did [Petitioner] ever tell you" certain things, the prosecutor came close to an improper reference to Petitioner's failure to testify", and recognized that "allowing a comment on the failure of the defendant to testify is an error of constitutional magnitude." *Id.* at 36 (citing *People v. Rendon*, 238 Ill. App. 3d 135, 140, 606 N.E2d 85, 89-90 (1992)). In *Griffin v. California*, 380 U.S. 609 (1965), for example, the Supreme Court reversed a conviction where the prosecutor made a number of explicit references to the defendant's decision not to testify[9], and the trial court exacerbated the prejudice by instructing the jury that it was free to draw inferences from the defendant's failure to testify concerning facts he reasonably should have known. *Id.* at 610-11. The trial court gave no such instruction in this case; and, although the prosecutor's references to what Petitioner did not tell the jury were improper, the context of his statement demonstrates that he was referring to Petitioner's defense posture and his statements to police rather than to his failure to testify.

The Appellate Court noted that even where a prosecutor has overstepped boundaries, a conviction can be upheld if "the reviewing court is able to conclude, upon examination of the entire record, that the error was harmless beyond a reasonable doubt." *Redding*, No. 1-98-0123, at 36. The federal standard is the same. *Dortch v. O'Leary*, 863 F.2d 1337 (7th Cir. 1988), was an appeal from the denial of a habeas petition, in which the respondent admitted that certain statements made by the prosecution during closing argument were in fact a direct comment on the petitioner's failure

---

[9] Specifically, the prosecutor reminded the jurors of "things he [the defendant] has not seen fit to take the stand and deny or explain. And in the whole world, if anybody would know, this defendant would know. Essie Mae [the victim] is dead, she can't tell you her side of the story. The defendant won't." *Id.* at 611.

to testify.[10]   The error was harmless, the Seventh Circuit concluded, where the evidence against

the petitioner was so overwhelming that the prosecutor's improper statements "would not have likely

changed the result of the trial."   *Id.* at 1344.   That test was met in *Dortch,* where the petitioner was

convicted of attempted armed robbery and murder following a failed robbery attempt  of a restaurant

in which one of the employees was fatally shot.   *Id.*  at 1339.   In finding the prosecution's improper

statement  harmless,  the  court  relied  heavily  on  the  testimony  of  two  witnesses,  one  who  was

standing two feet from the petitioner in the restaurant at the time of the incident and another to

whom the petitioner made an inculpatory statement.   *Id.* at 1345.   Applying a similar standard in

this case, the Illinois Appellate Court concluded that even if the prosecutor's challenged statements

were deemed to be an improper comment on Petitioner's failure to testify, it would result only in

harmless error beyond a reasonable doubt because of the evidence against Petitioner, which the

court  characterized  as  overwhelming.   *Redding*,  No.  1-98-0123,  at  37.   As  noted  earlier,  two

eyewitnesses,  Price  and  Baines,  testified  to  Petitioner's  active  role  in  the  gang  dispute  and

shooting.  Petitioner himself acknowledged, in one of several statements to authorities, that he had

been involved in the earlier fighting.  The victim was killed with a .45 caliber weapon, the same type

of weapon that Petitioner owned just two weeks prior to the incident.

        Again, the court is unable to characterize the Appellate Court's analysis as unreasonable.

---

[10]        During closing argument, the prosecution stated:

Now, Mr. Kling [defense counsel] has said a lot of things here and Mr. Kling, if you
recall, is the only one who has ever said anything about a clean-shaven person.  Mr.
Kling likes to testify.  He likes to stand up here and tell you things that never came
from the witness stand.  He told you that Leodis Dortch doesn't have to testify.  I
couldn't even comment on that.  I have no way to comment on that but he will stand
up and say, Leodis Dortch didn't testify because, let's assume he did and say that
he was at his house.   Mr. Kling likes to testify, because we know that Leodis Dortch
was not in his house, he was not in a movie, he was not reading a book.  He was
shooting a man down on September 19, 1979, but Mr. Kling will testify for his client.
Mr. Dortch will not testify.  Mr. Kling testifies for him.

*Dortch*, 863 F.2d at 1343.

Moreover, case law that post-dates *Dortch* suggests the matter is governed by a more flexible standard for purposes of this petition. In *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993), an appeal from the denial of a habeas petition, the Supreme Court considered the matter of whether a prosecutor's comment on petitioner's post-arrest silence was harmless error. The Court characterized the comment as a "trial error," rather than a "structural defect[] in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards." *Id.* at 629. (citations omitted). On collateral review, the question for the federal court is whether the erroneous statement "had substantial and injurious effect or influence in determining the jury's verdict," not, as phrased in *Dortch*, whether the error was harmless beyond a reasonable doubt. *Id.* at 637. The court went on to state that petitioners are "not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.*

The prosecution's comment regarding a defendant's failure to testify at trial is also categorized by the Court as a "trial error." *Arizona v. Fulminante*, 499 U.S. 279, 301 (1991) (citing *United States v. Hastings*, 461 U.S. 499 (1983)). Thus, under the *Brecht* standard, Petitioner is entitled to habeas relief from the prosecutor's improper comments only if he can demonstrate some prejudice as a result of those comments. This court believes that no prejudice resulted from these brief, unfortunate, and arguably improper references, in the prosecutor's long closing argument.

Thus, this court denies habeas relief to the Petitioner on this claim.

### G.     Prosecution improperly attempted to shift the burden of proof

Next, the Petitioner claims that he was denied his right to a fair trial because the prosecution improperly attempted to shift the burden of proof. During his closing argument, the prosecutor stated:

> And again, you also heard - and this is going to be another coincidence that the defense doesn't explain, and I didn't hear the defense explain this, but as Mr. Baines told you about a couple of weeks before, this defendant is trying to sell a .45, a .45 semiautomatic gun, to Richard Baines and the guys that he was with . . .

24

*Redding*, No. 1-98-0123, at 36.  The second statement by the prosecution was "[h]e offered to sell [sic] .45 semi-automatic, two weeks before.  Is there any coincidence now, all of a sudden you have two .45's?"  *Id.*

The Illinois Appellate court held that the prosecutor's statements did not shift the burden because it is only a statement in regards to uncontradicted evidence submitted at trial.  *Id.* at 37. The court stated that "prosecutorial comment that the State's evidence stands uncontradicted is admissible and does not purport to shift the burden of proof."  *Id.* at 37 (citing *People v. Norman*, 28 Ill.2d 77, 81, 190 N.E.2d 819, 821 (1963)).    As described earlier, the federal standard is the same.  *See Harris*, 271 F.3d at 700 (a reference to "uncontradicted" or "uncontested" testimony is improper only if it was manifestly intended or would necessarily be understood as a comment on the defendant's failure to take the stand).   The case cited by Petitioner, *United States v. Dahdah*, 864 F.2d 55 (7th Cir. 1988), does little to bolster his argument here.  In that case, during closing, the prosecutor commented that "the evidence in this case is overwhelming, that is why it is not surprising that the defendant took the stand yesterday and got up there and told you she did not know [that she was transporting heroin]."  *Id.* at 59.  The court characterized this statement as "nothing more than a general comment on the implausibility of Dahdah's defense--a reasonable inference based on the evidence."  *Id.*   Here, similarly, the Appellate Court concluded that the prosecutor did no more than comment on what he viewed as an implausible aspect of Petitioner's defense.  This court does not find its application of the law unreasonable.

## H.    Cumulative effect of improper statements denied the Petitioner a fair trial

In its lengthy opinion, the Illinois Appellate Court recognized that several of the prosecutor's statements were troublesome, and recognized, as well, that it had power to reverse Petitioner's conviction based on the "cumulative impact of improper prosecutorial remarks."  *Redding*, No. 1-98-0123, at 37 (citing *People v. Fletcher*, 156 Ill. App. 3d 405, 412, 509 N.E.2d 625, 629 (1987)).  In

the Appellate Court's view, however, the cumulative impact of the improper statements by the prosecution were dwarfed by the overwhelming evidence of Petitioner's guilt. *Id.*

This court shares the Appellate Court's assessment. The prosecutor's opening statement and closing argument were not models of propriety. The Illinois Appellate Court determined that many of these statements were harmless error in light of the "overwhelming evidence" against the Petitioner. *Redding*, No. 1-98-0123, at 13-15. The evidence here does amply support the jury's verdict.[11] In any event, the inquiry for the court is not whether it would assess the record in the same way as did the Appellate Court, but whether it can say that the Appellate Court unreasonably applied federal law and made an unreasonable determination of facts. The Appellate Court here carefully considered each of Petitioner's claims individually; it proceeded to determine whether the cumulative effect of the prosecutor's conduct required reversal. This court might have resolved individual questions differently, but it is unable to say that the Appellate Court's resolutions are unreasonable.

The Petition for relief based on the prosecutor's conduct is denied.

## II.    Fifth and Sixth Amendment Rights

In an amended Petition, submitted through counsel, Petitioner argues that his conviction of accountability for murder constituted trial error, which violated his Fifth and Sixth Amendment rights. (Amendment to Petitioner's 28 U.S.C. § 2254 Petition, at 2) (hereinafter, "Amended Petition.") Specifically, Petitioner claims that he can not be convicted of accountability as an accomplice to murder when the primary actor or the shooter (Taylor) was determined not guilty by reason of self defense. The Petitioner argues that the verdict in relation to Taylor means that no crime was committed and thus he can not be held accountable for his part in a crime that never took place.

---

[11]    Two eyewitnesses identified the Petitioner as the shooter. His own alibi witnesses were inconsistent. Petitioner attempted to sell a gun matching the murder weapon just two weeks earlier, and was involved in a fist fight with a rival gang faction moments before that faction's return to his home set off the gun fight that resulted in the victim's death.

The Petitioner contends this result is dictated by the Illinois law of accountability, which provides:

> Separate Conviction of Person Accountable. A person who is legally accountable for the conduct of another which is an element of an offense may be convicted upon proof that the offense was committed and that he was so accountable, although the other person claimed to have committed the offense has not been prosecuted or convicted, or has been convicted of a different offense or degree of offense, or is not amenable to justice, or has been acquitted.

720 ILCS 5/5-3. The plain language of this statute would appear to contemplate conviction of an accomplice, such as Petitioner, even where a purportedly more culpable individual is acquitted. In arguing for a different conclusion here, Petitioner emphasizes the words "proof that the offense was committed and the he was so accountable." (Amended Petition, at 4.) Petitioner notes that his co-Defendant Taylor was acquitted of the crime of murder on a self-defense theory; because Taylor's conduct was in self-defense, Petitioner here reasons, Taylor himself did not commit a crime at all. Because no offense was committed, he reasons, Petitioner could not be guilty of aiding and abetting that offense.

The merit of this argument is questionable. Most significantly, Petitioner himself was convicted of murder; he was not convicted of aiding and abetting Charles Taylor. The cases he cites are of little assistance. In *People v. Schmitt*, 131 Ill.2d 128, 545 N.E.2d 665 (1989), the Illinois Supreme Court concluded that the trial court erred (albeit harmlessly) in concluding that before appellant could be convicted as a drug source, his codefendant must be convicted of dealing: "There is no doubt, . . . , that a guilty verdict in [the alleged dealer's] case should not have been a prerequisite to finding [the alleged drug dealer] guilty." *Id.* at 139, 545 N.E.2d at 669. *People v. Quinn*, 96 Ill. App.2d 382, 238 N.E.2d 619 (2nd Dist. 1968), was an abstract opinion in which the Appellate Court held that the fact that other parties involved in an assault of police officer were acquitted was not ground to relieve defendant of his responsibility where it was clear that defendant had initiated the altercation.

Regardless of its merits, however, this court declines to address it. As the Respondent points out, this claim has been procedurally defaulted by the Petitioner. (Respondent's Answer to Amended Petition, at 3.)  The Petitioner failed to raise the claim before the Illinois courts and instead raises this claim for the first time before this court.  As previously explained, a Petitioner is required to provide state courts with a full and fair opportunity to review a claim before seeking habeas relief.   Having failed to do so, he is barred from presenting the argument to this court.

Petitioner suggests cause and prejudice permit him to proceed despite the default, but the court is unpersuaded.   The "cause" cited by the Petitioner is that he was denied the effective assistance of counsel at trial and on direct appeal.  (*Id.* at 3.)  This cause fails, however, because the claim for ineffective assistance of counsel must also be presented to the state courts for review. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  In this instance, the ineffective assistance of counsel argument was not presented to the Illinois courts and thus can not serve as "cause" to avoid the procedural default doctrine.  In light of this ruling, the court need not address possible prejudice to the Petitioner.  Nor does the court believe that conviction of Petitioner under these circumstances constitutes a fundamental miscarriage of justice.  The fact that Taylor successfully established self-defense does not require the conclusion that Petitioner was not guilty.  A review of the trial transcript reveals that counsel  expressly declined to request a self-defense instruction, (Trial Transcript, Vol. IV at 908-09; 1082), adhering instead to an alibi defense, one the jury obviously rejected.  A reasonable jury could well have concluded that Petitioner was a willing participant in the gang fight that resulted in the death of an innocent victim.  Thus, he has not demonstrated that absent the alleged constitutional violation, "it is more likely than not that no reasonable juror would have convicted him." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citing *Schlup,* 513 U.S. at 329 ).  Moreover, the language of the very statute Petitioner cites supports the conclusion that his conviction may stand despite the fact that the person for whose conduct he is held accountable "has been acquitted."

### III.     Reasonable Doubt and False Evidence Claim

Included within Petitioner's submissions are references to the sufficiency of the evidence and a suggestion that the prosecution used false evidence in obtaining the conviction. To the extent either of these claims has been submitted to this court, the court concludes that both are procedurally defaulted. As mentioned previously, the only issue raised by the Petitioner and properly before this court for habeas review is whether certain comments made by the prosecution during opening statement and closing argument denied him a fair trial.

Because the claims regarding false evidence and sufficiency of the evidence have been raised for the first time in this court, these claims are procedurally defaulted, nor has Petitioner presented cause or prejudice justifying an exception to the procedural default rule.

**CONCLUSION**

The petition for writ of habeas corpus is denied because the Petitioner has procedurally defaulted his claims or he has failed to meet the burden necessary to be granted relief.

ENTER:

Dated: March 24, 2007

REBECCA R. PALLMEYER
United States District Judge